THOMPSON, APPELLANT, *v.* LAWSON MILK COMPANY ET AL., APPELLEES.

(No. 75AP-529—Decided March 30, 1976.)

*Messrs. Thompson, Swope, Burns & Biswas,* for appellant.

*Messrs. McNamara & McNamara, Mr. William H. Woods* and *Mr. John L. Miller,* for appellees.

REILLY, J. This is an appeal from a judgment of the Franklin County Municipal Court, which sustained defendants' motion for a directed verdict at the close of plaintiff's case. The transcript shows that plaintiff Dolores E. Thompson, during April 1972, purchased a pound of chopped ham from defendant Lawson Milk Company's store in Reynoldsburg, Ohio. The meat was not prepackaged, but was cut by machine by the salesperson at the store. The processed meat came from the store's refrigerated counter and was cut into thin slices.

Plaintiff took the meat home and placed it in her refrigerator. The following day she made a sandwich with the meat and two slices of bread. She testified that the first time she bit down on the sandwich she felt a stabbing pain go through one of her teeth and through her jaw. Apparently, she swallowed part of the first bite and took the remaining fragments from her mouth and placed them in a napkin. She testified that as a result of biting down on the particles in the chopped ham, she continued to feel severe pain upon chewing food on the left side of her mouth.

The following day she visited her dentist, Dr. Oscar Weston. She returned to him again in June because the pain continued. During December 1972, she lost a part of the tooth that had been injured when biting down upon the chopped ham. Dr. Weston testified by deposition that the same tooth he had examined in June had fractured. He repaired the buckled surface of the tooth with a large silver filling. Moreover, he stated that, in his opinion, the tooth had broken apart because of the April 1972 incident. He rendered an expert opinion that plaintiff would have future dental problems resulting from the injury, and that she would need root canal treatment, along with a full coverage crown to restore the tooth.

Nonetheless, the trial court concluded, in sustaining the motion for a directed verdict, as follows:

"It is my opinion that the Court, in the Grafton case, is saying that if a substance is natural to the food that is being eaten, that it is not adulterated, it is not a foreign substance, and that it is something that the person who eats it should guard against. That being so, I feel that I have to sustain the motion of the defendant."

This appeal was timely filed, including the following assignment of error:

"The trial court erred in sustaining the motion for directed verdict at the end of plaintiff's case for the reason that the cartilage or bony-like substance was not a substance which a person would reasonably anticipate in lunch meat, the nature of chipped ham."

The Supreme Court, in *Allen* v. *Grafton* (1960), 170 Ohio St. 249, states at 258: "The better test of what is legally defective appears to be what consumers customarily expect and guard against." Morever, the Supreme Court wrote explicitly at page 259:

"In our opinion, the possible presence of a piece of oyster shell in or attached to an oyster is so well known to anyone who eats oysters that we can say as a matter of law that one who eats oysters *can reasonably anticipate and guard against eating* such a piece of shell, especially where it is as big a piece as the one described in plaintiff's petition." (Emphasis added.)

The court, in the *Grafton* case, noted several analogous situations. For instance, cherry pie could reasonably be expected to have a cherry stone, although an ideal cherry pie is stoneless. Chicken pies could reasonably be expected to have chicken bones. In short, bones or such substances could reasonably be anticipated by consumers in particular kinds of foods. Thus, consumers should be on guard against such substances. The issue in this case is whether a consumer could reasonably anticipate and guard against such a substance as eaten by plaintiff, as a matter of law, or is this a question for a jury to determine?

We find from the totality of the evidence that it is a jury issue. Civ. R. 50 reads, in part, as follows:

"(A) Motion for directed verdict.

"* * *

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

It was Doctor Weston's opinion that plaintiff's tooth fractured due to her biting "on the foreign object which she complained of when I first saw her." He testified: "This caused the fracture." Plaintiff testified concerning the substance in the meat, as follows:

"Q. And then what happened?

"A. With the first bite, I started to chew on the lower left-hand side of my mouth and I felt, as you had said, a stabbing pain go down through my tooth like a spike and through my jaw and, with that, obviously, I had, you know, food in my mouth, and I had swallowed part of it. But I could feel something in my mouth, so I took what I had in my mouth out, put it in my hand and picked out little white pieces of some foreign substance.

"Q. How big were these particles?

"A. I do not know the exact measurements of the particles.

"Q. Were they large?

"A. They were not large.

"Q. Or small?

"A. They were small, but then I had already bitten down on them and there were maybe three or four particles, and I could not tell you the exact size.

"Q. Did you swallow part of this?

"A. Yes, I did swallow part of the bite that I had in my mouth.

"Q. But the substance that you recovered in your hand was small, very small, and very white and broken up; is that correct?

"A. Yes, yes."

Furthermore, plaintiff's Exhibit 2, a laboratory report from the Ohio Department of Agriculture, Consumer Analytical Laboratories, contains the following description of the substance examined:

"The white particles were received wrapped in paper towel. The 2 mm. x 1 mm. and 1 mm. x I mm. particles softened quickly in water. The other particle, 1 1/2 mm. x 1 mm., softened by boiling in water. All three pieces had the translucent appearance and elastic properties of cartilage or connective tissue."

An inference can be drawn from the foregoing description, in plaintiff's Exhibit 2, that a hard substance was involved.

Thus, we find it is a jury question whether a consumer should expect material to be included in chopped ham, hard enough to break a tooth and be on guard against such a result. The jury, of course, may ultimately decide the issue for defendants. It is not, however, strictly an issue of law in this case. Therefore, plaintiff's assignment of error is sustained.

The judgment of the trial court is reversed and remanded for further proceedings in accordance with law, consistent with this decision.

*Judgment reversed.*

McCORMAC, J., concurs.

STRAUSBAUGH, P. J., dissents.

STRAUSBAUGH, P. J., dissenting. I would affirm the judgment of the trial court. A cartilage is a translucent elastic tissue found in meat and a substance one should expect to find in chopped ham. The mere fact that plaintiff's tooth was broken does not indicate that the substance was hard, but, rather, that the tooth was cracked or defective and could have broken by chewing on a piece of bread.