**BONACKER et al., Appellants,**

v.

**H.J. HEINZ COMPANY et al., Appellees.**

[Cite as *Bonacker v. H.J. Heinz Co.* (1996), 111 Ohio App.3d 569.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69548.

Decided June 10, 1996.

*Mark Immormino,* for appellants.

*Teresa G. Stanford,* for appellee H.J. Heinz Company.

*Bunda Stutz & Dewitt, Robert A. Bunda, Anne Y. Koester* and *John P. Hayward,* for appellee Owens–Brockway Glass Container, Inc.

O'DONNELL, Judge.

Kenneth and Cindy Bonacker appeal the decision of the trial court granting summary judgment in favor of both the H.J. Heinz and the Owens–Brockway Glass Container companies on a product liability claim for lacerations to Kenneth's hands when a fourteen-ounce ketchup bottle broke in his hands as he attempted to open it.

On February 16, 1991, while working as a manager at an Elias Brothers Big Boy restaurant, Kenneth Bonacker, intending to demonstrate for employees an easy way to open ketchup bottles, asked a cook, Scott Madej, to retrieve an unopened bottle of Heinz ketchup from a shipment that had arrived earlier that day from the Elias Brothers commissary in Warren, Michigan. Owens–Brockway had manufactured the bottle and shipped it to the H.J. Heinz Company, where it was filled with ketchup, packaged, and shipped to the Elias Brothers commissary in Warren, Michigan.

Bonacker held the fourteen-ounce bottle in his left hand, and as he tapped the bottom of the bottle with the palm of his right hand, it unexpectedly exploded or broke, resulting in severe lacerations to his hands. The pieces of glass were discarded and have never been available for examination in this case.

The Bonackers subsequently sued Owens–Brockway Glass Container, Inc. and the H.J. Heinz Company for Bonacker's injuries, alleging a defect in the manufacture of the bottle. Owens and Heinz moved for summary judgment and the trial court granted both motions. The Bonackers now appeal and assign two errors for our review. Because they concern a common question of law, we consider the assignments of error together:

I

"The trial court erred, to the prejudice of the appellants, in granting the motion for summary judgment of appellee Owens–Brockway Glass Container, Inc. under Civil Rule 56 with respect to the claims of the appellants, brought under O.R.C. 2307.73, that the ketchup bottle which proximately caused injury to Kenneth Bonacker was defective in manufacture."

II

"The trial court erred, to the prejudice of the appellants, in granting the motion for summary judgment of appellee H.J. Heinz Co. under Civil Rule 56 with respect to the claims of the appellants, brought under O.R.C. 2307.73, that the ketchup bottle which proximately caused injury to Kenneth Bonacker was defective in manufacture."

The Bonackers argue that the trial court erred in granting summary judgment to the appellees because the expert testimony of Charles H. Drummond III demonstrates that the bottle defect probably occurred during the manufacturing process.

Owens–Brockway and Heinz argue that the trial court properly granted summary judgment because the Bonackers failed to present evidence of any defect in the bottle *at the time of manufacture.*

Motions for summary judgment are governed by Civ.R. 56, which provides:

"(C) * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, wiitten admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the actions, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *."

The party seeking the summary judgment bears the burden of proof in showing that no material issue of fact remains to be litigated. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. However, once that party demonstrates that no material issue of fact remains to be litigated, the nonmoving party then has the burden of going forward with evidence to demonstrate a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Thus, as provided in Civ.R. 56(E):

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of

his pleadings, but his response * * * must set forth specific facts showing that there is a genuine issue for trial."

In considering a motion for summary judgment under Civ.R. 56, the evidence must be construed most strongly in favor of the party against whom the motion for summary judgment is made. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

With these standards in mind we consider the entry of summary judgment in this product liability case.

R.C. 2307.73 provides a cause of action based on product liability when a product is defective in manufacture as described in R.C. 2307.74. R.C. 2307.74 provides:

"A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. * * * "

In Ohio, a plaintiff in such a product liability case bears the burden of proving (1) that there was a defect in the product manufactured and sold by the defendant, (2) that the defect existed at the time the product left the hands of the defendants, and (3) that the defect was the direct and proximate cause of the plaintiff's injuries or loss. *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489; *State Auto. Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891.

In this case, Charles H. Drummond III, appellants' expert in ceramic engineering, expressed his opinion that the ketchup bottle broke due to a bottle defect. Additionally, Kenneth Bonacker testified in his deposition that although he had tapped ketchup bottles hundreds of times before, he had never had any other incident where the bottle broke. However, as the court explained in *State Farm, supra,* 37 Ohio St.3d at 6–7, 523 N.E.2d at 494 this evidence is not sufficient to prove a manufacturing defect:

"[E]vidence of unsafe, unexpected performance of a product, while sufficient to [imply] the existence of a defect, satisfies but one of the three elements necessary for recovery. Plaintiffs are still required to demonstrate by a preponderance of direct or circumstantial evidence that the claimed defect was present when the product left the hands of the manufacturer and proximately caused the claimed injuries."

Thus, we next consider the critical question in this case, whether the Bonackers demonstrated that the claimed defect was present at the time it left the manufacturer. Appellees moved for summary judgment, stating that the Bonack-

ers could not establish this fact. Specifically, they explained that the Bonackers had no proof that the bottle in question was defective when it left the hands of the defendants, because any manufacturing defect would have caused the bottle to break during the filling process due to the heating and cooling procedures used. Based on these allegations made by the movants, the Bonackers became obligated to produce specific facts showing a genuine issue of fact for trial, as required by Civ.R. 56(E).

In reviewing the record before us to determine if a genuine issue of fact exists as to whether the ketchup bottle had a manufacturing defect, we note at the outset that the broken bottle was discarded and, therefore, that Drummond could not have examined the bottle remnants or actual broken pieces of glass. Under these circumstances, R.C. 2307.73(B) provides:

"[I]t shall be sufficient for a claimant to present circumstantial or other competent evidence that establishes, by a preponderance of the evidence, that the product in question was defective [in manufacture]." See, also, *State Farm, supra.*

Accordingly, Drummond stated that although he could not rule out other possible causes of the defect, given the circumstances under which the bottle broke, as described by Kenneth Bonacker, the defect *probably* occurred during the manufacturing process.

On the issue of whether a defective bottle would have broken during the heating process while filling the bottle, Drummond stated at page 44 of his deposition:

"If there are severely weakened or damaged bottles, it is likely in the process of being cleaned and filled they could break. That's not to say that there aren't defects that are not severe enough to cause breakage in that process. Based upon that and the likelihood of damage during transport, any damage during filling that didn't result in breakage at the time, it's my opinion that the most likely source of the defect was during the manufacturing process * * *."

Nonetheless, Drummond did not state whether bottles whose defects are not severe enough to break under thermal temperature changes would indeed break like the bottle held by Kenneth Bonacker.

*More important for a determination of this case, however, we recognize that* Drummond based his opinion about a manufacturing defect on a series of assumptions. Specifically, Drummond assumed facts about packaging and transport, stating at pages 43–44 of his deposition:

"The possibilities of it being damaged during shipment and transport I don't think are too likely. If indeed the bottles were shipped in cardboard containers with dividers so that there was no glass-to-glass contact and sealed, the likelihood

that the bottles would be damaged during shipment is not great. * * * So if, during the entire process, it was in the container with—assuming no glass-to-glass contact, it's extremely unlikely that there would be any damage done to the bottles at that time."

These assumptions notwithstanding, Kenneth Bonacker stated in his deposition that the bottle in question arrived in a box with no cardboard dividers between the bottles. Therefore, in this case, Drummond's opinion about the probable source of the defect is based on an assumption that the bottles were shipped with dividers and without glass-to-glass contact, an assumption inconsistent with the facts in this case. This inconsistency leads to a flawed conclusion because one of the premises upon which it is based is untrue, and because the law requires testimony of a defect to be credible, specific, and related to the facts of the case. *Shaw v. Toyotomi Am., Inc.* (1995), 101 Ohio App.3d 54, 654 N.E.2d 1337.

Thus, construing the evidence before us most strongly in favor of the Bonackers, as we are required to do under Civ.R. 56, we cannot conclude that appellants met their burden of going forward with evidence to set forth specific facts showing a genuine issue for trial. The best evidence that the bottle was defective at the time it left the manufacturer consisted of Drummond's opinion of the probable source of the defect, which he based on an incorrect assumption, *i.e.*, that no glass-to-glass contact existed during shipment. This error leads to a flawed conclusion, and reasonable minds are not drawn to false assumptions or flawed conclusions. Therefore, because the Bonackers failed to meet their burden of presenting specific and credible evidence of a manufacturing defect and because appellees presented credible evidence no such defect existed, reasonable minds could come to but one conclusion, that Owens–Brockway and Heinz were entitled to judgment as a matter of law. Accordingly, the trial court properly granted summary judgment and these assignments of error are overruled.

*Judgment affirmed.*

Dyke, P.J., and Patton, J., concur.