MITCHELL, Appellant,

v.

T.G.I. FRIDAY'S et al., Appellees.

[Cite as *Mitchell v. T.G.I. Friday's* (2000), 140 Ohio App.3d 459.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99–CA–201.

Decided Oct. 30, 2000.

*Gemma & Gemma* and *Anthony Gemma,* for appellant.

*Comstock, Springer & Wilson* and *Lawrence R. Springer,* for appellee T.G.I. Friday's.

*Pfau, Pfau & Marando* and *Matthew R. Planey,* for appellee Pro Source Distributing.

WAITE, Judge.

This timely appeal arises from the trial court's grant of summary judgment to appellee T.G.I. Friday's and to appellee Pro Source Distributors. For the following reasons, we affirm the judgment of the trial court.

On April 11, 1996, appellant Sandra Mitchell was having dinner at appellee Friday's restaurant (hereinafter "Friday's"). Appellant was eating a fried clam

strip when she bit into a hard substance that she believed to be a piece of a clam shell. Appellant experienced immediate pain and later sought dental treatment. Some time later, the crown of a tooth came loose. It was determined that the crown could not be reattached and the remaining root of the tooth was extracted.

On September 2, 1997, appellant filed a product liability action against Friday's, which served the meal, and appellee Pro Source Distributing (hereinafter "Pro Source"), the supplier of the fried clams. Both Friday's and Pro Source filed motions for summary judgment, which the trial court granted without explanation on June 18, 1999.

Appellant timely filed her notice of appeal on July 19, 1999. On February 16, 2000, Pro Source filed with this court a document titled "Suggestion of Bankruptcy," informing this court that Pro Source, now known as Ameriserve Food Distribution, Inc., is subject to bankruptcy proceedings in United States Bankruptcy Court for the District of Delaware. Pro Source further notified this court that pursuant to Section 362 of the Bankruptcy Code, orders of relief stay the commencement or continuation of judicial, administrative, or other actions or proceedings against Pro Source. Pro Source did not file a brief until five days prior to oral argument but did not request leave to be heard at oral argument. Since Pro Source did not timely file its brief, we may accept appellant's statement of the facts and issues as correct and reverse the trial court's judgment as relates to Pro Source if appellant's brief reasonably appears to support such action. App.R. 18(C).

Appellant's sole assignment of error alleges:

"The trial court committed error in sustaining the motions of defendants-appellees for summary judgment."

Appellant argues that in light of Ohio's product liability legislation, the trial court should have applied the "reasonable-expectation test" to her claim and in doing so the court should not have granted appellees' motions for summary judgment. R.C. 2307.74 provides that "[a] product is defective [if] * * * [i]t deviated in a material way from the design specifications, formula, or performance standards of the manufacturer * * *." R.C. 2307.75(A)(2) provides that a product is defective in design or formulation if "[i]t is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." According to appellant, by the enactment of these statutes the "reasonable-expectation" test supersedes the traditional "foreign-natural test" applied in cases where injury is caused by substances in food. Appellant asserts that there is a reasonable expectation that clams are completely cleaned of their shells and free of foreign materials. Based on the record before us, we hold that this assignment of error lacks merit.

Before addressing the merits of this argument, we begin by noting that the trial court's journal entries granting summary judgment to appellees failed to delineate any basis for the decisions. Such practice has become common in courts subject to our review. While on review, we must and do conduct a meticulous de novo review on appeal, a trial court that gives careful consideration to a motion for summary judgment along with a concise explanation of its decision will benefit the whole of the judicial process. The trial court will not only serve the parties by providing the basis for more expeditious appeals, but may encourage the termination of claims by use of conspicuous and irrefutable logic. The interests of justice are only well served if the parties are informed as to the basis for decisions that affect them.

█ Turning to appellant's assignment of error, we reiterate that when reviewing a motion for summary judgment, an appellate court reviews the judgment independently with no deference given to the trial court's decision. *Bell v. Horton* (1996), 113 Ohio App.3d 363, 365, 680 N.E.2d 1272, 1273–1274.

Civ.R. 56(C) states:

"* * * Summary Judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against when the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

█ In addition, summary judgment under Civ.R. 56 is proper where:

" '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

In the present case, Friday's set forth in its motion for summary judgment appellant's deposition testimony to the effect that while eating a clam strip, she bit down on "a hard, foreign substance." Appellant stated that she assumed it was a piece of a clam shell. Appellant described the size of the object as about a

quarter of the size of a small fingernail or about a quarter of an inch or smaller and irregular in shape. Moreover, Friday's attached an affidavit from its manager, Eric Hicks, who immediately responded to appellant's report of the incident. In that affidavit, Hicks confirmed that the object appellant presented to him was indeed a piece of clam shell and that it was approximately one-quarter inch in length and irregularly shaped. In its motion for summary judgment, Pro Source adopted and incorporated the statement of Friday's, appellant's deposition testimony, and the affidavit of Eric Hicks. In her response, appellant set forth no facts to dispute that the object in the clam strip was in fact a piece of clam shell. Our review of the record reveals no facts to suggest otherwise.

There being no factual dispute here, we must decide whether appellees are entitled to judgment as a matter of law. Civ.R. 56(C). Both Friday's and Pro Source presented essentially the same argument, that regardless of whether the foreign-natural test or reasonable expectation test was applied, appellant has no claim against appellees. Appellant, however, has argued for the application only of the reasonable-expectation test. She argues that Ohio's product liability statute supersedes cases employing the foreign-natural test where deleterious substances are found in food. Appellant contends that what a consumer should reasonably expect to be present in food is a question for the jury to decide. *Thompson v. Lawson Milk Co.* (1976), 48 Ohio App.2d 143, 2 O.O.3d 112, 356 N.E.2d 309.

■ The basis of appellant's argument for application of the reasonable-expectation test is found in R.C. 2307.75, which provides that a product is defective if it is more dangerous than an ordinary consumer would reasonably suspect. However, appellant has not set forth any case law or analysis that would suggest that food products fall under the purview of the statute. We can find no case that has analyzed a food item in that context. Indeed, the weight of product liability cases deal with synthetic products, for example, a cargo door hinge, a glass bottle, or a prosthetic hip joint. See, respectively, *Atkins v. Gen. Motors Corp.* (1999), 132 Ohio App.3d 556, 725 N.E.2d 727; *Bonacker v. H.J. Heinz Co.* (1996), 111 Ohio App.3d 569, 676 N.E.2d 940; *White v. DePuy, Inc.* (1998), 129 Ohio App.3d 472, 718 N.E.2d 450. Thus, we see no compelling reason to abandon any established test due to the enactment of Ohio's product liability legislation.

However, it does not appear necessary to determine which test applies to the present case. Save for reference to the product liability statute, a similar argument was addressed in *Mathews v. Maysville Seafoods, Inc.* (1991), 76 Ohio App.3d 624, 602 N.E.2d 764. In *Mathews,* the plaintiff suffered a bowel injury when he swallowed a fish bone while eating a fish fillet served by the defendant. The trial court granted the defendant's motion for summary judgment. On

appeal, the defendant argued for the adoption of the reasonable-expectation test as opposed to the foreign-natural test.

■ The *Mathews* court set forth both tests. Under the foreign-natural test:

" 'Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones.' " *Id.* at 625, 602 N.E.2d at 765, quoting *Mix v. Ingersoll Candy Co.* (1936), 6 Cal.2d 674, 682, 59 P.2d 144, 148.

■ The reasonable-expectation test states:

" 'The test should be what is "reasonably expected" by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation. * * * As applied to the action for common-law negligence, the test is related to the foreseeability of harm on the part of the defendant. The defendant is not an insurer but has the duty of ordinary care to eliminate or remove in the preparation of the food he serves such harmful substances as the consumer of the food, as served, would not ordinarily anticipate and guard against.' " *Mathews, supra,* at 625, 602 N.E.2d at 765, quoting *Zabner v. Howard Johnson's, Inc.* (Fla.App.1967), 201 So.2d 824, 826–827.

The *Mathews* court looked to *Allen v. Grafton* (1960), 170 Ohio St. 249, 10 O.O.2d 289, 164 N.E.2d 167, where the plaintiff was injured after swallowing a piece of oyster shell contained in a serving of fried oysters. The Supreme Court held:

" 'The presence in one of a serving of six fried oysters of a piece of oyster shell approximately 3 X 2 centimeters (about 1 ⅕ inches by ⅘ of an inch) in diameter will not justify a legal conclusion either (a) that that serving of fried oysters constituted "food" that was "adulterated" within the meaning of Section 3715.59, Revised Code, or (b) that that serving constituted food not "reasonably fit for" eating.' " *Mathews, supra,* at 626, 602 N.E.2d at 765, quoting *Allen v. Grafton,* paragraph four of the syllabus.

The *Mathews* court further noted:

" 'In the instant case, it is not necessary to hold * * * that, because an oyster shell is natural to an oyster and thus not a substance "foreign" to an oyster, no liability can be predicated upon the sale of a fried oyster containing a piece of oyster shell. However, the fact, that something that is served with food and that will cause harm if eaten is natural to that food and so not a "foreign substance," will usually be an important factor in determining whether a consumer can reasonably anticipate and guard against it. * * *

" 'In our opinion, the possible presence of a piece of oyster shell in or attached to an oyster is so well known to anyone who eats oysters that we can say as a matter of law that one who eats oysters can reasonably anticipate and guard against eating such a piece of shell, especially where it is as big a piece as the one described in plaintiff's petition.' " *Mathews, supra,* at 626, 602 N.E.2d at 765, quoting *Allen, supra,* at 258–259, 164 N.E.2d at 174–175.

Most courts which have relied on *Allen* conclude that the Ohio Supreme Court has adopted the foreign-natural test. *Mathews, supra,* at 626, 602 N.E.2d at 765. However, other courts have found that *Allen* endorses the reasonable-expectation test. One such case is *Thompson v. Lawson Milk Co., supra,* on which appellant relies for her proposition that what should be reasonably expected is a question for the jury to decide.

Despite the opposing interpretations of *Allen,* the *Mathews* court stated that " * * * it is not necessary to decide whether the 'reasonable expectation' test or the 'foreign-natural' test holds sway in Ohio * * *." *Mathews, supra,* at 627, 602 N.E.2d at 765. The court stated that it must be reasonably expected that even a fish fillet may contain fish bones. *Id.,* citing *Polite v. Carey Hilliards Restaurants, Inc.* (1985), 177 Ga.App. 170, 338 S.E.2d 541; *Schoonover v. Red Lobster Inns of Am., Inc.* (Oct. 15, 1980), Hamilton App. No. C–790547, unreported. The *Mathews* court noted that in *Polite,* the court applied the foreign-natural test in affirming a summary judgment for the defendant where the plaintiff swallowed an obviously naturally occurring one-inch fish bone concealed in a fish fillet. *Mathews, supra,* at 627, 602 N.E.2d at 765–766.

In addressing the application of the reasonable-expectation test, the *Mathews* court noted that the test usually presents a question for the jury. *Id.* at 627, 602 N.E.2d at 765–766, citing *Zabner v. Howard Johnson's, Inc., supra,* at 828. However, it is clear that in some cases the occurrence of a deleterious substance must be reasonably expected as a matter of law:

" 'An occasional piece of clam shell in a bowl of clam chowder is so well known to a consumer * * * that we can say the consumer can reasonably anticipate and guard against it.' " *Id.,* quoting *Koperwas v. Publix Supermarkets, Inc.* (Fla. App.1988), 534 So.2d 872, 873.

Moreover, in *Ex parte Morrison's Cafeteria of Montgomery, Inc.* (Ala.1983), 431 So.2d 975, the court adopted the reasonable-expectation test, but still held for the defendant as a matter of law:

"[A] one-centimeter bone found in a fish fillet 'makes that fish neither unfit for human consumption nor unreasonably dangerous.' * * *

"Courts cannot and must not ignore the common experience of life and allow rules to develop that would make sellers of food or other consumer goods

insurers of the products they sell." *Id.* at 979; *Mathews, supra,* at 627, 602 N.E.2d at 765–766, in which the court held that as a matter of law a consumer must reasonably anticipate and guard against the presence of a fish bone in a fish fillet.

In the present case, it cannot be disputed that the piece of clam shell that caused appellant's injury was natural to the clam strip she consumed. Turning to the question of whether appellant should have reasonably anticipated the presence of the clam shell, we are reminded of the Ohio Supreme Court's holding in *Allen, supra,* that "the possible presence of a piece of oyster shell in or attached to an oyster is so well known to anyone who eats oysters that we can say as a matter of law that one who eats oysters can reasonably anticipate and guard against eating such a piece of shell * * *." *Id.* at 259, 10 O.O.2d at 294–295, 164 N.E.2d at 174. The facts of the present case are virtually indistinguishable from *Allen* except for the type of injury and that, here, appellant was eating fried clams rather than fried oysters. We therefore hold that, as a matter of law, one who eats clams can reasonably anticipate and guard against eating a piece of shell.

As appellant's claim fails under both tests, we overrule her assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

Cox, P.J., and Vukovich, J., concur.