JOURNAL ENTRY and OPINION
{¶ 1} This is an appeal from the trial court's decision granting summary judgment to appellees. Appellee Rolf Waschpusch ("Waschpusch"), a recreational motorcycle enthusiast, contacted his friend, appellee Carl Brunello ("Brunello"), to assist him in custom-building a motorcycle for his personal use. Brunello is also a recreational motorcycle enthusiast. Waschpusch drove down to Florida to pick up a rolling chassis that was manufactured by appellee Sundance Components, Inc. ("Sundance") and brought the frame back to Ohio to custom-build the motorcycle at Brunello's house. Waschpusch and Brunello worked on the motorcycle in Brunello's backyard, driveway, and garage.
 {¶ 2} Once the motorcycle was finished, Waschpusch rode it and put approximately 500 miles onto it. When the weather turned colder, he stopped riding the motorcycle. Waschpusch noticed, however, that Brunello had a bigger and, in Waschpusch's mind, better custom-made motorcycle. Waschpusch approached Brunello about selling the better motorcycle to him. Brunello told Waschpusch that he should sell his motorcycle and use the proceeds from the sale toward the purchase of Brunello's motorcycle.
 {¶ 3} Waschpusch did just that. He sold his motorcycle to appellant Ralph Sheppard ("Sheppard"). The motorcycle was in the repair shop of appellee Revolution/RPM, Inc. ("RPM") at the time of the sale because RPM was installing a third front end on the motorcycle. Because Brunello was going to be the recipient of the proceeds from the sale of the motorcycle (and Waschpusch was going to receive Brunello's motorcycle in exchange), Brunello itemized the receipt and set the price for Waschpusch's motorcycle to be purchased by Sheppard. The receipt, prepared on RPM letterhead, was signed by the owner of RPM, appellee Robert Ipser ("Ipser"), per the request of Sheppard to enable him to present it to his bank to obtain financing for the purchase of the motorcycle. The $25,000 cashier's check, although made payable to Sheppard and RPM, was endorsed over and made payable to Brunello. The proceeds of the sale went to Brunello and Brunello's motorcycle went to Waschpusch. Later, Sheppard had the Ohio State Highway Patrol issue title for the motorcycle, stating that he assembled the motorcycle himself.
 {¶ 4} Approximately one year after Sheppard purchased the motorcycle, the motorcycle fell apart in two pieces and collapsed while he was riding it with a passenger. Sheppard noticed that he was having a hard time controlling the motorcycle and it began to fall apart at the neck of the motorcycle's frame. Sheppard presented a property damage claim to his insurance carrier, State Farm, who paid him $30,947.82 for the loss of the motorcycle. After taking the insurance money, Sheppard purchased the salvage title and all of the motorcycle parts back from State Farm for $5,000, then sold the various parts, kept the engine for himself, and had another builder use the engine to build a larger, more powerful motorcycle for his personal use. Thereafter, Sheppard filed his complaint against appellees, alleging that the motorcycle was defective and that appellees were strictly liable for manufacturing and selling the defective motorcycle.
 {¶ 5} The trial court granted summary judgment to all appellees. With respect to Sundance (and its owners and shareholders, Robert Horst, Sandra Horst, and Thomas Horst), the trial court found that Sheppard failed to prove there was a defect in the motorcycle frame as sold by Sundance, that the alleged defect existed at the time the product left Sundance, and that the defect was the direct and proximate cause of Sheppard's injuries. In so finding, the trial court reasoned that Sundance's averments in its affidavit that the motorcycle frame was altered after leaving its possession broke the causal chain and relieved Sundance of liability. The trial court also held that Sundance made no warranties, either express or implied, to Sheppard about the motorcycle.
 {¶ 6} With respect to RPM (and its owner Ipser and his wife, Beth Ipser), the trial court found that RPM is not a manufacturer nor a supplier under R.C. 2307.71. Also, the trial court found that RPM had not made any representations or warranties, either express or implied, to Sheppard as to the condition of the motorcycle.
 {¶ 7} The trial court also granted summary judgment to Waschpusch, finding that Waschpusch does not meet the definition of a manufacturer or supplier under R.C. 2307.71 and that because Waschpusch is not a manufacturer or supplier, he cannot be liable on Sheppard's claims for breach of warranties.
 {¶ 8} Further, the trial court granted summary judgment to Brunello, finding that the evidence revealed that Brunello was not involved in the assembly of the motorcycle's frame or neck — the exact part that is indisputably defective — and thus cannot be found to have been negligent. The trial court also found that Brunello does not meet the definition of manufacturer or supplier and cannot be found liable on Sheppard's claims for breach of warranties.
 {¶ 9} Sheppard now appeals, citing five assignments of error.
 {¶ 10} For his first assignment of error, Sheppard contends that the trial court erred when it found no evidence of a manufacturing defect in the motorcycle. In particular, Sheppard asserts that he presented expert reports detailing the scientific and technical causes of the motorcycle's collapse — all of which opined that the failure in the motorcycle was a result of improper manufacturing and welding on the steering mechanism and frame. Further, Sheppard asserts that the trial court should not have accepted Robert Horst's affidavit (and in essence disregarded the evidence presented by Sheppard), which stated that the product was not defective, but fell apart due to two small screw holes that were placed in the frame after it left Sundance's hands. Sheppard's assertions are well-taken.
 {¶ 11} R.C. 2307.73 provides a cause of action based on product liability when a product is defective in manufacture as described in R.C. 2307.74. R.C. 2307.74 provides:
 {¶ 12} "A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. * * *"
 {¶ 13} "In Ohio, a plaintiff in such a product liability case bears the burden of proving: (1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." Bonaker v. H.J. Heinz Co.
(1996), 111 Ohio App.3d 569, 572, 676 N.E.2d 940.
 {¶ 14} Here, a genuine issue of material fact remains as to whether the frame, manufactured by Sundance, was defective when it left Sundance's hands or whether the frame was materially altered and became defective after it left Sundance's hands. Sheppard put forth evidence that there was a defect in the product and that the defective frame was the cause of Sheppard's injury. There is a dispute of material fact as to whether the defect existed when the frame left Sundance.
 {¶ 15} Reasonable minds could differ as to whether to believe Sheppard's experts, who opined that the frame was defective because of improper manufacturing by Sundance, or Robert Horst's affidavit that two small screw holes materially altered the frame after it left Sundance and made it defective. Without more, it cannot be said, based on the opinions of the experts and the sole counter-affidavit, that Sundance is entitled to judgment as a matter of law on Sheppard's claim that the frame, indisputably manufactured by Sundance, was defective. Thus, the decision of the trial court granting summary judgment to Sundance, Robert Horst, Sandra Horst, and Thomas Horst is reversed and the genuine issue of material fact — whether the frame was defective when it left the hands of Sundance — is remanded.
 {¶ 16} For his second assignment of error, Sheppard contends that the trial court erred when it found RPM to be a corporation. In particular, Sheppard argues that RPM is a sole proprietorship, not filed as a corporation with the Ohio Secretary of State, and cannot shield itself from liability by claiming it is a corporation. However, Sheppard's contention is without merit, as there is no evidence in the record before us that reflects a finding by the trial court that, in fact, RPM is a corporation. The journal entry granting summary judgment to RPM did not include a finding that RPM is a corporation. Because the trial court made no such finding, Sheppard's second assignment of error is overruled.
 {¶ 17} Because the analysis of Sheppard's third and fourth assignments of error is similar, they will be addressed together. For his third assignment of error, Sheppard contends that the trial court erred when it found RPM, Brunello, and Waschpusch were not "suppliers" as defined under Ohio's strict product liability statutes. For his fourth assignment of error, Sheppard contends that the trial court failed to hold RPM, Brunello, and Waschpusch potentially liable as "suppliers" when Sheppard could prove that Sundance, the manufacturer, was insolvent. Sheppard's contentions, however, are without merit.
 {¶ 18} First, R.C. 2307.71(I) defines "manufacturer" as follows:
 {¶ 19} "(I) `Manufacturer' means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product."
 {¶ 20} "Supplier" is defined in R.C. 2307.71(O) as follows:
 {¶ 21} "(O)(1) `Supplier' means, subject to division (O)(2) of this section, either of the following:
 {¶ 22} "(a) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;
 {¶ 23} "(b) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.
 {¶ 24} "(2) `Supplier' does not include any of the following:
 {¶ 25} "(a) A manufacturer;
 {¶ 26} "(b) A seller of real property;
 {¶ 27} "(c) A provider of professional services who, incidental to a professional transaction the essence of which is the furnishing of judgment, skill, or services, sells or uses a product;
 {¶ 28} "(d) Any person who acts only in a financial capacity with respect to the sale of a product, or who leases a product under a lease arrangement in which the selection, possession, maintenance, and operation of the product are controlled by a person other than the lessor."
 {¶ 29} Here, there is no evidence that RPM, Brunello, or Waschpusch meets the definition of "manufacturer" as none of them are "engaged in a business" to create or custom build motorcycles. RPM is a repair shop, but does not engage in the business of creating motorcycles. Brunello and Waschpusch are recreational motorcycle enthusiasts who custom-build motorcycles as a hobby. They have (or had, in the case of Brunello who is retired) separate full-time jobs. Moreover, there is no dispute that Sundance manufactured the frame that Waschpusch purchased. Under the definition of R.C. 2307.71(I), Sundance is a manufacturer.
 {¶ 30} Moreover, there is no evidence that RPM, Brunello, or Waschpusch meet the definition of "supplier" as none of them placed the motorcycle or the alleged defective frame in the stream of commerce. Even if RPM, as a repair shop and the installer of a third front end onto the motorcycle, qualifies it as a "supplier," Sheppard failed to show how RPM's installation of a third front end to the motorcycle was negligent. R.C.2307.78(A) (subjecting a "supplier" to liability only under a theory of negligence, not strict liability). As opined by Sheppard's experts, the defect which allegedly caused Sheppard's injuries were the frame, not the front end of the motorcycle.
 {¶ 31} There is no evidence that Brunello and Waschpusch acted in the course of business of selling motorcycles when the two "recreational motorcycle enthusiasts" built the motorcycle, originally for Waschpusch's use, in Brunello's garage, driveway, and yard. There is also no evidence that any of the building or assembling that Brunello or Waschpusch did failed or caused Sheppard's accident. Brunello and Waschpusch were merely "occasional sellers" of the custom-built motorcycle — not ones engaged in the business of selling motorcycles. Because there is no evidence that RPM, Brunello, and Waschpusch were "suppliers" under R.C. 2307.71(O), the trial court's decision granting summary judgment to them with respect to Sheppard's strict product liability claims was proper. Thus, Sheppard's third assignment of error is overruled.
 {¶ 32} Further, R.C. 2307.78(B)(2) provides that a supplier may be held liable as a manufacturer if "the claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer." Sheppard's argument that he could prove or assert that the manufacturer, Sundance, was insolvent misses the point because RPM, Brunello, and Waschpusch do not meet the definition of "supplier." Without the prerequisite finding that RPM, Brunello, or Waschpasch are "suppliers," any evidence that Sundance may be insolvent is immaterial. Thus, Sheppard's fourth assignment of error is overruled.
 {¶ 33} Finally, Sheppard contends in his fifth assignment of error that the trial court erred by holding that RPM, Brunello, and Waschpusch were not liable for breaching any warranties, either implied or express. In particular, Sheppard asserts that because the motorcycle he purchased was being repaired 80% of the year he had it prior to the accident, RPM, Brunello, and Waschpusch should be held liable for breaching the warranty of merchantability and fitness for a particular purpose. However, Sheppard's contention is without merit.
 {¶ 34} Sheppard had to first establish that RPM, Brunello, and Waschpusch were either manufacturers or sellers of the motorcycles. None were manufacturers, as discussed in this court's analysis of Sheppard's third assignment of error. RPM was not the seller of the motorcycle, as it did not offer the motorcycle for sale, nor did it receive the proceeds from the sale. Brunello was also not the seller of the motorcycle, as he did not offer the motorcycle for sale. Brunello may have received the proceeds of the sale of the motorcycle (although technically, the proceeds were applied toward the sale of Brunello's motorcycle to Waschpusch); however, there is no evidence that Brunello made any representations to Sheppard about the motorcycle or its roadworthiness. And while Waschpusch may have received the proceeds (i.e., Brunello's motorcycle) of the sale, there is also no evidence that Waschpusch made any representations to Sheppard about the motorcycle. Because there was no evidence presented by Sheppard that RPM, Brunello, or Waschpasch made any representations to him regarding the motorcycle, Sheppard's fifth assignment of error is overruled. Thus, the trial court did not err in granting summary judgment to RPM, Brunello, and Waschpasch.
 {¶ 35} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.
 {¶ 36} This cause is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
 {¶ 37} It is ordered that the plaintiff-appellant bear all costs herein taxed.
 {¶ 38} It is ordered that a special mandate be sent to said court to carry this judgment into execution.
 {¶ 39} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., concurs.
 Celebrezze, Jr., J., concurs in part and dissents in part withseparate opinion.